CLARE E. CONNORS
United States Attorney
District of Hawaii

MICHAEL F. ALBANESE #9421
W. KEAUPUNI AKINA #11565
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail:    michael.albanese@usdoj.gov
           Keaupuni.akina@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 19-00114 HG (2) |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S SENTENCING MEMORANDUM; CERTIFICATE OF SERVICE |
| vs. | ) | |
| | ) | |
| MARILYN AHAKUELO, (2) | ) | Sentencing Hearing: |
| | ) | Date: March 28, 2023 |
| Defendant. | ) | Time: 2:15 p.m. |
| | ) | Judge: The Honorable Helen Gillmor |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America ("United States"), by its counsel, Clare E.

Connors, United States Attorney for the District of Hawaii, and Michael F.

Albanese and W. KeAupuni Akina, Assistant United States Attorneys, hereby submits this Sentencing Memorandum in advance of the sentencing hearing of Defendant Marilyn Ahakuelo on March 28, 2023. For the reasons that follow, taking into account the relevant factors in Title 18, United States Code, Section 3553(a), the United States recommends a sentence within the advisory guideline range of 70 to 87 months imprisonment followed by three years of supervised release. In addition to any sentence of imprisonment, the government respectfully recommends that the Court enter an order of restitution in the amount recommended by probation ($9,686.55) as well as a forfeiture money judgment, as previously requested by the government.

**I.   STATEMENT OF THE CASE**

On August 22, 2019, an indictment was filed against the defendant, along with her husband, co-defendant Brian Ahakuelo, charging (with respect to this defendant) conspiracy, wire fraud, and embezzlement from a labor union. Presentence Investigation Report ("PSR"), Dkt. No. 301, at ¶¶ 1-6. From October 14, 2022 through November 18, 2022, the defendant appeared for a jury trial, after which the defendant was adjudged guilty as to all charged counts. *Id.* at ¶ 9.

Since the time of her arrest, the defendant has been released on bail conditions. *Id.* at ¶ 8. Following the guilty verdict, the Court permitted the defendant to remain on the same conditions. *Id.* at ¶ 10. According to the U.S.

Probation and Pretrial Services Office, the defendant has complied with all Court-ordered conditions of pretrial release. *Id.*

## II.   RECOMMENDATION

### A.   Nature and Circumstances of the Offense

The summary in the defendant's PSR fairly and accurately describes the offense conduct, and after an extended trial, this Court is very familiar with the offense conduct. This defendant was charged in the Indictment for her conduct in two areas: (i) her role as a co-conspirator of Brian Ahakuelo in the rigging of the dues increase vote in January 2015; and (ii) her use of union funds to pay for personal travel.

Brian Ahakuelo was elected the Business Manager / Financial Secretary ("BM/FS") for International Brotherhood of Electrical Workers ("IBEW") Local Union 1260 in July 2011, and he immediately hired the defendant as a clerical employee. By late 2014, due in large part to vastly increased spending, Brian Ahakuelo initiated the process to propose a dues increase to the membership of Local Union 1260.

The Local Union 1260 Bylaws required that "dues, admission fees, and/or assessments shall not be increased except by a majority vote by secret ballot of the members in good standing…." Several proposed resolutions, including the dues increase resolution, were read at the December 2014 membership meetings of each

of the nine voting units and voted on in January 2015. It was quickly apparent that the dues increase resolution was very unpopular, particularly among the utilities employees who made up a large proportion of Local Union 1260. For example, the January 2015 meeting with Unit 1, which consisted primarily of HECO employees, was very contentious, and Unit 1 voted against the dues increase 197 (no votes) to 22 (yes notes). While the dues increase resolution passed in some of the smaller units, taking out Units 4 and 9 (discussed below), the dues resolution was set to fail by a resounding margin, 402 (no votes) to 98 (yes votes).

      Unit 4 included the television stations and most of the staff of LU1260, as well as a few other employers. The meetings were held at the conference room at the Topa Tower offices, and were typically attended by less than 10 people. According to the Unit 4 minutes, the Unit 4 membership meeting occurred on January 19, 2015 and the dues increase resolution passed by a vote of 98 yes votes to 11 no votes. However, the evidence at trial showed that the minutes were false. The minutes reflected that over 100 members attended and that the votes were counted at the meeting. The actual meeting had less than 12 persons in attendance, and the votes were not counted at the meeting – rather, they were counted in secrecy by a relative of the Ahakuelo family (the defendant's daughter-in-law's cousin) at his house, with no witnesses present. According to sign-in

sheets, a large proportion of those in attendance were from the TV stations; however, witness testimony at trial showed that the TV members were unaware of the vote and would have voted against the increase if given the opportunity.

The false minutes gave the impression that a vote was carried out in the normal course, with members voting in person at a single meeting, and passing the dues increase resolution by a resounding margin. They were created for this purpose to increase the votes in support of the dues increase resolution. The minutes were material, in that the Local Union 1260 secretary reviewed the unit meeting minutes and vote tallies in order to calculate the vote total to submit to the IBEW International Office. The defendant was the person tasked with creating unit minutes for the Oahu meetings, and someone using her computer and password was the last to edit the Unit 4 minutes file. Thus, the evidence at trial demonstrated that the defendant created the Unit 4 minutes containing falsified voting information. But for the false Unit 4 vote, the dues increase vote would have failed.

Even counting the fake results in Unit 4, Units 1 through 8 cumulatively voted against the dues increase resolution by a total of 196 yes votes to 413 no votes. Unit 9 was the last to vote. Brian Ahakuelo enlisted several co-conspirators to falsify the vote in Unit 9 by creating and counting fake ballots. The defendant's role in the Unit 9 vote was limited; however, the evidence showed that the

defendant created the minutes for the Unit 9 meeting and emailed them to the Unit 9 reporter. The Unit 9 reporter testified that she normally prepared the minutes herself, and this was the only time that someone from the Honolulu staff prepared the meeting minutes. Given the circumstances, it is a reasonable inference that the defendant knew of the fraud at Unit 9 when preparing the Unit 9 minutes, and that she was tasked to create the minutes rather than the Unit 9 reporter so that Brian Ahakuelo could tightly control exactly what information went into the minutes. This control was particularly crucial, as Brian Ahakuelo had made an off-the-record promise to the Unit 9 membership not to increase their dues, a promise he desired to hide from the other units and the IBEW International Office.

    The defendant did not participate in the conspiracy purely out of spousal obligation – she directly benefited from her actions. With Brian Ahakuelo in charge, the defendant saw steady promotions and increases in pay throughout her employment at Local Union 1260. By 2016, the defendant was receiving an annual salary of well over $100,000 per year. *Id.* at ¶ 43. The defendant's employment record since 2016 suggests that the market value of her professional experience and education is far less, as her gross monthly income (despite working full time) at each of her jobs since leaving Local Union 1260 has been approximately 25% of the rate she received at Local Union 1260. *Compare Id.* at ¶ 97 (employed at Holiday Inn Express, gross monthly income $2,513.33) *to* ¶ 102

(employed at Local Union 1260, gross monthly income $10,046.40).  The dues increase contributed to Local Union 1260's ability to pay the defendant's salary and continue to employ other Ahakuelo family members.  She also benefited by attending several luxurious business trips, including to Tokyo and Macau, that had little (if any) legitimate benefit to the Local Union 1260 membership.

Another benefit that the defendant received was that she and her husband used Local Union 1260 money to pay for personal travel, frequently in first class seats.  The evidence at trial showed that the defendant embezzled over $7,000 over three instances of personal travel, charged in Counts 65 through 67.  *Id.* at ¶ 41.  All told, the defendant was a key part in Brian Ahakuelo's crimes, and a key beneficiary as well.

### B. History and Characteristics of the Defendant

The defendant has no criminal history.  *Id.* at ¶ 78.  She has consistent employment history since leaving Local Union 1260. *Id.* at ¶¶ 97-102

She graduated from high school in Wahiawa in 1981 and reports no college education.  *Id.* at ¶ 96.  Despite having significant total assets, including a 2016 Porsche Boxster and a 2021 Mercedes-Benz C 300, the defendant reports a negative net worth of -$94,993, largely as a result of significant credit card, vehicle, and student loan debt.  *Id.* at ¶ 103.  According to court records, the defendant and her husband filed for Chapter 7 bankruptcy in 2001.  *Id.* at ¶ 104.

**C.     The Need for the Sentenced Imposed**

18 U.S.C. § 3553(a) includes the need for a sentence to afford adequate deterrence and protect the public.  The defendant conspired with her husband to falsify the results of a dues increase vote that was not supported by the majority of members, thus causing financial damage to the union itself (when it later had to borrow money to refund the dues) and reputational harm as well.  She did so both out of loyalty to her husband and out of greed, to continue the lifestyle she had achieved while Brian Ahakuelo was the head of the union – six-figure salary, lavish "business trips" around the world, and union funds to pay for personal travel.  While the defendant is no longer employed by any local labor organization, and thus specific deterrence is not applicable, the Court's sentence should send a message that *any* participation in such a scheme that results in financial or reputational harm to a local labor union will result in significant punishment.

**D.     The Kinds of Sentences Available and the Sentencing Range**

Based on the defendant's offense level and criminal history category, the U.S.S.G. suggest a guideline range of 70 to 87 months of imprisonment, followed by 1 to 3 years of supervised release.  A sentence of probation is not prohibited by statute, but not recommended by the guidelines.  *Id.* at ¶¶ 113-15.

**E.     The Need to Avoid Unwarranted Sentence Disparities**

In this case, there are four potential comparators. Michael Brittain, Daniel Rose, Lee Ann Miyamura, and Russell Yamanoha each cooperated with the government and all pled guilty to the same charge – conspiracy to make and cause to be made false entries in records required to be kept by a labor union, a misdemeanor offense. Each of these four had a role in the creation of the fake ballots for the Unit 9 vote, and two participated in switching the fake ballots with the genuine ballots. As reflected in pages 4 to 5 of the PSR, each received probation sentences (of varying length), a fine, and community service.

Brittain, Rose, Miyamura, and Yamanoha are not appropriate comparators and should not suggest to this Court that the defendant deserves a non-jail sentence. Their roles were more limited than the defendant, and the benefits they received from their participation were less significant. Most importantly, each of the four cooperators met with federal investigators, admitted their conduct, and agreed to testify both in grand jury and in open court, providing substantial assistance to the government. These factors set the four cooperating witnesses in a category apart from the defendant.

**F.    The Need to Provide Restitution to Any Victims of the Offense**

The PSR has determined that restitution is mandatory in this case and has calculated that the defendant is personally responsible to pay $9,686.55. *Id.* at ¶¶ 120-121.

### III.     Recommendation

The presentence investigation report indicates that the defendant's offense level is 27 and her criminal history category is I, suggesting a guideline range of imprisonment of 70 to 87 months.   Probation has recommended a downward variance to 60 months imprisonment.   In balancing all of the statutory factors, the government respectfully disagrees that a variance is appropriate and recommends that the court impose a guideline sentence of between 70 and 87 months, followed by three years of supervised release.   Additionally, the government respectfully requests the Court issue an order of restitution in the amount recommended by probation ($9,686.55) as well as a forfeiture money judgment as filed by the government.

The offense in this case caused great harm to a labor organization that has responsibility for approximately 3,000 members in Hawaii and Guam.   The defendant was motivated primarily by greed, to live a "first class" lifestyle at the expense of the members' interests.   The defendant has demonstrated no acceptance of responsibility.   In fact, her argument for a lower offense level in her sentencing statement was essentially that she is innocent, an issue a jury has already resolved as a matter of law.   The defendant believes she has done nothing wrong, which leads the government to believe that she would make the same decisions should she be in a similar situation in the future.   The defendant's

actions, and her failure to take responsibility for those actions, demand a significant sentence, as outlined above.

DATED: March 21, 2023, Honolulu, Hawaii.

Respectfully Submitted,

CLARE E. CONNORS
United States Attorney
District of Hawaii

By <u>/s/ Michael F. Albanese</u>
  MICHAEL F. ALBANESE
  W. KEAUPUNI AKINA
  Assistant U.S. Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

<u>Served by CM/ECF</u>:

    Rebecca S. Lester, Esq.
    rlesteratty@gmail.com

    Attorney for Defendant
    Marilyn Ahakuelo

<u>Served by email</u>:

    U.S. PROBATION OFFICE
    ATTN: Darsie J.T. Ing-Dodson
    300 Ala Moana Boulevard, Room 2-300
    Honolulu, HI 96850
    darsie_ing-dodson@hip.uscourts.gov

    DATED: March 21, 2023, Honolulu, Hawaii.

                                                  */s/ Michael F. Albanese*
                                                  U.S. Attorney's Office
                                                  District of Hawaii